## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re

GameTech International, Inc., *et al.*[1]

Debtors.

Chapter 11

Case No. 12-11964

(Joint Administration Pending)

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING BUT NOT DIRECTING THE DEBTORS TO PAY (I) CERTAIN PREPETITION EMPLOYEE OBLIGATIONS, AND (II) PREPETITION WITHHOLDING OBLIGATIONS, AND (B) DIRECTING BANKS TO HONOR RELATED PREPETITION TRANSFERS

The above-captioned debtors and debtors-in-possession (collectively, the **"Debtors"**) hereby move the Court (the "**Motion**") pursuant to sections 105, 363, 507(a), 541, and 1108 of title 11 of the United States Code §§ 101-1532 (the **"Bankruptcy Code"**) and Rule 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**) for entry of an order: (a) authorizing, but not directing, the Debtors to pay (i) certain prepetition employee and independent contractor obligations, and (ii) prepetition withholding obligations; and (b) directing all banks to honor the Debtors' prepetition checks or electronic transfers for payment of any of the foregoing, and prohibiting banks from placing any holds on, or attempting to reverse, any automatic transfers on account of the foregoing. In support of this Motion, the Debtors respectfully state as follows:

### Status of the Case and Jurisdiction

1.      On the date hereof (the "**Petition Date**"), the Debtors commenced these cases (the "**Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtors have continued in possession of their properties and are operating

---

[1] The Debtors in these chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are GameTech International, Inc. (2983), GameTech Arizona Corp. (9812), GameTech Canada Corp. (0001), and GameTech Mexico S. De R.L. de C.V. (5489).

and managing their businesses as debtors-in-possession pursuant sections 1107(a) and 1108 of the Bankruptcy Code.

3.   No request has been made for the appointment of a trustee or examiner, and a creditors' committee has not yet been appointed in these Cases.

4.   The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5.   The statutory bases for the relief requested herein are sections 105(a), 363, 507(a), 541, and 1108 of the Bankruptcy Code and Bankruptcy Rules 2017, 6003, and 6004(h).

## Background

6.   GameTech International, Inc. ("**GII**") was incorporated in 1994 and is a global gaming technology company dedicated to the development and manufacturing of cutting-edge gaming entertainment products and systems. GII and its affiliated Debtors are principally involved in two business segments:  (1) the bingo market and (2) the video lottery terminal market.

7.   GameTech's bingo business leases electronic bingo equipment and licenses related software and games throughout the United States and Canada to charitable organizations, Native American tribes, the military, casinos and other licensed operators.  GameTech's products allow operators to provide a variety of playing options and GameTech continues to update its product lines to keep pace with customer demands.

8.   GameTech's video lottery terminal or "VLT" business includes traditional slot machines, video poker, keno and spinning wheel games, as well as the related software and game content.

9.     GameTech's total revenue for calendar year 2011 exceeded $30 million. GameTech projects a modest decline in revenue in 2012 followed by increasing revenue in 2013.

10.     The Debtors have faced a competitive and difficult business environment since 2008. The impact of the general market conditions on the Debtors was exacerbated by problems resulting from the acquisition of the VLT business in 2007. Despite these issues, however, the Debtors have a strong national platform, are leaders in the electronic bingo market    (with approximately 26% of the total market), and have identified a number of growth opportunities for their businesses.A more detailed factual background of the Debtors' business and operations, as well as the events precipitating the commencement of these Cases, is fully set forth in the *Declaration of Andrew E. Robinson in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the **"First Day Declaration"**), filed contemporaneously herewith and incorporated herein by reference.

## Relief Requested

11.     To enable the Debtors to retain their current employees (the **"Employees"**) during this critical time, to minimize the personal hardship such Employees may suffer if prepetition employee-related obligations are not paid when due or honored as expected, and to maintain morale, the Debtors, by this Motion, seek authority, in their discretion, to pay and/or honor, as the case may be, (a) certain prepetition claims of Employees and Independent Contractor (as defined below), including, but not limited to, claims for wages, salaries, commissions, paid time off, and unpaid reimbursable expenses, and certain costs and disbursements related to the foregoing (collectively, the **"Employee Compensation"**), up to the statutory cap of $11,725.00 per Employee and Independent Contractor (as defined below), (b) any claims or payments pursuant to the Employee Benefit Plans (as defined below), and (c) all

prepetition federal and state withholding obligations.

12.    The Debtors' Employees provide essential services to the Debtors, which are important to the Debtors' business, and, as such, the Debtors seek to pay their respective wages and Paid Time Off (as defined below).

13.    The Debtors further request that the Court enter an order directing all banks to honor the Debtors' prepetition checks or electronic transfers for payment of the foregoing, and prohibiting banks from placing any holds on, or attempting to reverse, any automatic transfers on account of the foregoing.

14.    The Debtors seek authorization to make the following payments pursuant to the terms of this Motion:

| Gross Payroll Amount Estimation | Total | Notes |
|---|---|---|
| **Estimated Employee Payroll Per 2 weeks** | | |
| Gross Salary | $283,427 | (1) |
| Payroll Taxes (Company Paid) | $22,972 | (1) |
| Payroll Taxes (Employee Paid) | $56,270 | (1) |
| **Estimated Accruals** | | |
| Wages and Salaries | $141,714 | (2) |
| Independent Contractor | $142,171 | (2) |
| Payroll Taxes -Employee | $28,135 | (2) |
| Payroll Taxes - Company | $11,486 | (2) |
| Paid Time Off | $9,399 | (2) |
| Business Expenses | $15,600 | (2) |
| Employee Health Plan | $22,370 | (2) |
| Workers' Compensation | $3,630 | (2) |
| Life Insurance | $830 | (2) |
| Tuition Reimbursement | $0 | (2) |
| Withholding Obligations | $12,000 | (2) |

(1)  Estimates are based on payroll amounts for the pay period issued on June 29, 2012.

(2)  Estimated accruals are as of Petition Date.

I.    **Payment of Employee Compensation, Withholding
      Obligations, and Workers' Compensation Insurance Costs**

A.    **Employee Compensation**

(i) **Wages or Salaries**

15.    As of the Petition Date, the Debtors' aggregate workforce consisted of approximately 107 Employees and certain Independent Contractors (as defined below).[2] The Debtors employ approximately 48 Employees on an hourly basis, and the remaining Employees on a salary basis.

16.    The Debtors' two-week gross payroll obligation is approximately $283,427. The vast majority of Debtors' Employees are paid through electronic fund transfers *(i.e.,* direct deposit), and only ten (9 active and 1 severance) Employees are paid by check. The Debtors estimate that, as of the Petition Date, Employees' accrued unpaid wages or salaries (the **"Wages or Salaries"**) may be as high as approximately $141,714 in the aggregate, or on average approximately $1,324 per Employee, and inclusive of payments mailed on June 29, 2012.

(ii)    **Independent Contractor Obligations**

17.    The Debtors have agreements with a total of approximately 45 distributors who work with the Debtors as independent distributors and/or sales and service representatives (the **"Independent Distributors"**).    The Debtors' Independent Distributor network is a a key strategic asset and the Independent Distributors have cultivated relationships with the Debtors' customers who are loyal to the Debtors' products.    If the Debtors are unable to continue to pay the Independent Distributors their withheld commissions (described below), they will lose the services of the Independent Distributors, their institutional knowledge and relationships with the

---

[2]  As of the Petition Date, GII had 106 employees, GameTech Canada Corp. had 3 employees, and GameTech Arizona Corp. and GameTech Mexico S. De R.L. de C.V. each had no employees.

Debtors' customers, and their sales and service network will collapse. Therefore, the Independent Distributors are a critical component of the Debtors' ability to obtain new customers and maintain long-term customers.

18.    The Independent Distributors' commissions are calculated either on a fixed weekly basis, or as a percentage of sales. The Debtors estimate that, as of the Petition Date, in the aggregate, there are approximately $141,371.81 in accrued and unpaid commissions. By this Motion, the Debtors request authority to pay all prepetition amounts owing for the services of the Independent Distributors and to continue to pay such amounts in the ordinary course of business and consistent with their business practices.

19.    In the ordinary course of business, the Debtors also utilize the services of an additional independent contractor, who acts as an internal auditor (the **"Internal Auditor"** and together with the Independent Distributors, the **"Independent Contractors"**). The Debtors estimate that, as of the Petition Date, in the aggregate, there is approximately $800 owed to the Internal Auditor.

20.    The Debtors estimate that the aggregate unpaid amounts owed to their Independent Contractors (the **"Independent Contractor Obligations"**) are approximately $142,171.81. Because the services provided by the Independent Contracts are necessary for the Debtors' operations, the Debtors request authority to pay accrued and unpaid prepetition obligations to the Independent Contractors.

(iii)    **Payroll Taxes**

21.    In connection with its payroll, the Debtors, as employers, are required by law to withhold federal, state and local taxes from Wages or Salaries for remittance to appropriate tax authorities (the **"Employee Taxes"**). In addition, the Debtors are required to match, from their

own funds, the social security and Medicare taxes and pay, based on a percentage of gross payroll, and subject to state-imposed limits, additional amounts for state and federal unemployment insurance (together with the Employee Taxes, the **"Payroll Taxes"**) and remit the same to the appropriate authorities (collectively, the **"Taxing Authorities"**). The Debtors pay these Payroll Taxes to various Taxing Authorities in accordance with the Internal Revenue Code and applicable state law.

22.     Although it is difficult to assess precisely the amount of the Payroll Taxes, the Debtors' average two-week total obligation for Payroll Taxes relating to Wages or Salaries is approximately $22,971. At the time the Debtors pay Wages or Salaries in the ordinary course, the Debtors will submit any prepetition Payroll Taxes to the relevant Taxing Authorities. As of the Petition Date, to the best of the Debtors' knowledge, the Debtors estimate that the aggregate amount of accrued and unpaid Payroll Taxes is approximately $11,485.

### (iv)     Paid Time Off

23.     Eligible Employees generally earn paid time off for vacation, illness, or other personal requirements based on their length of service. Pursuant to the Debtors' policies, the Debtors' salaried and full-time hourly Employees are eligible to accrue paid time off (**"Paid Time Off"**). Salaried and full-time hourly Employees accrue ten days of Paid Time Off for the first two years of continuous service. Employees' Paid Time Off increases to fifteen days after the end of the second year of service and increases to twenty days after the end of the fourth year of service. Employees earn an additional five days (for a total of 25 days) of Paid Time Off beginning in their tenth year of service and for every year thereafter, with a maximum accrual of 25 days.

24.     There is a limit to the amount of Paid Time Off that an Employee can accrue or

roll over, and unused Paid Time Off hours in excess of 200 are lost at the end of the fiscal year.

25.     The Debtors estimate that the prepetition accrued and unpaid amount owed to their Employees in the form of Paid Time Off is approximately $427,000, in the aggregate. The Debtors intend to allow Employees to use accrued unused Paid Time Off in the ordinary course and will pay cash in lieu of such accrued vacation time only to the extent required by applicable law. By this Motion, the Debtors request authority to continue to honor their Paid Time Off policies in the ordinary course of business and to honor all prepetition obligations related thereto.

### B.     Expenses

**Business Expenses.**

26.     The Debtors have a formal policy whereby their Employees seek reimbursement of business-related expenses. The Debtors routinely reimburse Employees for certain ordinary course expenses incurred within the scope of their employment, including travel, lodging, ground transportation, meals, and other miscellaneous expenses (collectively, the **"Business Expenses"**).     Employees submit requests for reimbursement of Business Expenses to the accounts payable department. The expense reimbursement requests are processed promptly and reimbursed by check. For all Debtors' Employees, the aggregate average monthly expense reimbursements are approximately $62,400, including $29,000 in automotive reimbursement to sales and service staff, and $33,400 in non-automotive travel expenses.

27.     Although the Debtors encouraged the submission of reimbursement requests prior to the Petition Date, it is possible that not all such requests were submitted or paid prepetition. As of the Petition Date, to the best of the Debtors' knowledge, the Debtors estimate that the aggregate amount of accrued and unreimbursed Business Expenses is approximately $15,600.

C.    **Employee Benefit Plans**

28.    In the ordinary course of business, and as is customary for companies of their size, the Debtors maintain various employee benefits and policies that provide their Employees with medical, dental, workers' compensation, and other benefits which are described in more detail below (collectively, the **"Employee Benefit Plans"**). Some of the Employee Benefit Plans are funded either partially or fully through contributions made by the Debtors. The Debtors seek authority to continue funding the Employee Benefit Plans.

(i)    **Employee Health Plan**

29.    The Debtors' Employees may chose to participate in the Debtors' Employee Health Plan, which includes medical, dental, and vision coverage (the **"Employee Health Plan"**). Full time Employees may enroll in the Employee Health Plan after thirty days of full-time hire. The Employee Health Plan is funded partly by the Debtors and partly by the participating Employees themselves. In the aggregate, the Employee Health Plan has a monthly cost of approximately $86,160. The Debtors fund approximately $66,200, and the Employees fund the balance of approximately $19,900.

30.    The Debtors seek authority to (a) continue to provide the Employee Health Plan for their Employees in the ordinary course of business, (b) continue to honor obligations under such benefit programs, including any premiums and administrative fees, and (c) pay all such amounts owed under the Employee Health Plan to the extent that they remain unpaid on the Petition Date. As of the Petition Date, the Debtors estimate that the accrued and unpaid costs for the Employee Health Plan is $22,370.

### (ii)   Workers' Compensation Program

31.    Under applicable state law, the Debtors are required to maintain workers' compensation insurance programs to provide their Employees with workers' compensation insurance coverage for claims arising from or related to their employment with the Debtors and to satisfy the Debtors' obligations arising under or related to these programs (collectively, the **"Workers' Compensation Program"**). The Workers' Compensation Program covers all Employees. It is critical that the Debtors be permitted to continue their workers' compensation insurance and pay their premiums for workers' compensation coverage, as not doing so would almost certainly be more costly. Specifically, in the event the Debtors are not able to maintain workers' compensation insurance, the Debtors would be required to provide proof of their financial ability to pay the workers' compensation benefits direct to the applicable Employee. *See* N.R.S. 616A.305, 616B.300(1). Additionally, a self-insured employer must obtain excess insurance in order to provide protection against a catastrophic loss. N.R.S. 616B.300(5). In addition, failure to maintain this insurance in Nevada, where the Debtors do business, could result in the institution of administrative or legal proceedings against the Debtors and their officers and directors. *See id.* The average monthly cost for the Workers' Compensation Program for the Debtors is approximately $14,521.

32.    The Debtors request authority to pay any and all prepetition amounts due or that may become due with respect to the Workers' Compensation Program. The Debtors further seek authority to maintain and continue their prepetition practices with respect to the Workers' Compensation Program, including, among other things, allowing workers' compensation claimants, to the extent they hold valid claims, to proceed with their claims under the Workers' Compensation Program. As of the Petition Date, the Debtors estimate that the accrued and

10

unpaid costs for the Workers' Compensation Program is $3,630.

### (iii)    Life Insurance Plan

33.    The Debtors provide life insurance benefit their Employees. (the **"Life Insurance Plan"**). Specifically, the Debtors provide all Employees with a life insurance benefit equal to their annual salary. The average monthly cost for the Life Insurance Plan is approximately $3,320. As of the Petition Date, the Debtors estimate the amount of accrued and unpaid costs for the Life Insurance Plan to be $830. By this Motion, the Debtors seek authority to pay all prepetition amounts owed on account of the Life Insurance Plan and to continue their prepetition practices with respect to such benefit.

### D.    Prepetition Withholding Obligations

34.    As part of the foregoing relief, the Debtors also seek authorization to pay all Employee federal and state withholding and payroll-related taxes relating to prepetition periods, including, but not limited to, all withholding taxes, Social Security taxes, unemployment taxes, Medicare taxes, and garnishments, as well as all other withholdings such as contributions to savings, retirement or pension plans, insurance contributions, and charitable contributions, if any (collectively, the **"Withholding Obligations"**).  As of the Petition Date, the Debtors estimate the amount of accrued and unpaid costs for the Withholding Obligations to be approximately $12,000. The Debtors seek Court authority to pay all prepetition amounts owed on account of the Withholding Obligations and to continue their prepetition practices with respect to such obligations.

35.    Debtors routinely withhold from Employees' paychecks the Withholding Obligations, and are required to transmit these amounts to third parties. The Debtors believe that such withheld funds, to the extent that they remain in the Debtors' possession, constitute moneys

11

held in trust and therefore, are not property of the Debtors' bankruptcy estates. Thus, whether or not such funds are prepetition amounts, the Debtors believe that directing such funds to the appropriate parties does not require Court approval.

36.    Accordingly, by this Motion, the Debtors seek authority to: (a) pay the accrued unpaid prepetition Employee Compensation; (b) remit the prepetition Payroll Taxes owing to the Taxing Authorities; (c) continue the Paid Time Off policies and allow any Paid Time Off accrued prepetition to be used or paid according to the prepetition policies; (d) pay any Business Expenses accrued prepetition; (e) continue to fund and pay any prepetition amounts due under any Employee Benefit Plans; and (f) pay any outstanding amounts owed by the Debtors for Withholding Obligations, including those incurred prepetition.

## II.    **Direction to Banks**

37.    The Debtors also seek an order authorizing and directing all banks to receive, process, honor, and pay any and all checks or electronic transfers drawn on the Debtors' general payroll accounts related to ordinary course payments for Employee Compensation, Payroll Taxes, Paid Time Off, Business Expenses, Employee Benefit Plans, Withholding Obligations, and premiums and fees in respect of Workers' Compensation Program as outlined above, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

### **Basis for Relief Requested**

38.    Pursuant to sections 105(a), 363(b), 363(c), and 507(a) of the Bankruptcy Code and the "necessity of payment" doctrine (discussed below), the Debtors seek authority to pay or to honor the obligations described in this Motion. *See 11 U.S.C. §§* 105(a), 363(b), 363(c), and 507. Section 363(b)(1) of the Bankruptcy Code states in pertinent part that: "[t]he trustee, after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *See 11 U.S.C. § 363(b)(1)*.  Section 105(a) of the Bankruptcy Code further provides, in pertinent part, a "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See 11 U.S.C. § 105(a)*.

39.    The relief requested in this Motion is supported by the well-established "necessity of payment" doctrine. This doctrine, which has been embraced by the Third Circuit, "teaches no more than if payment of a claim that arose prior to reorganization is essential to the continued operation of the business during the reorganization, payment may be authorized even if it is made out of corpus." *See In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981); *see also Pension Benefit Guarantee Corp. v. Sharon Steel Corp. (In re Sharon Steel Corp.),* 159 B.R. 730, 736 (Bankr. W.D. Pa. 1993) (embracing "necessity of payment" doctrine and citing *Leigh & New England Ry. Co.* with approval). In *In re Ionosphere Clubs, Inc.,* 98 B.R. 174 (Bankr. S.D.N.Y. 1989), the court relied on its equitable powers under section 105(a) of the Bankruptcy Code, and in particular, the "necessity of payment" doctrine, to authorize the debtor to pay current employees' prepetition wages, salaries, medical benefits, and business expenses claims. In that case, Judge Lifland found that the debtor had to make the payments to retain its current employees and maintain positive employee morale - two factors which were deemed critical to the rehabilitation of an operating debtor. *See id* at 176 (citing H.R. Rep. No. 595 95th Cong. 1st Sess. 16 (1977)). Other courts also have found that the "necessity of payment" doctrine applies to the payment of prepetition employee compensation and benefits. *See, e.g., In re Chateaugay Corp.,* 80 B.R. 279, 281 (Bankr. S.D.N.Y. 1987).

40.    Moreover, this Court has approved the payment of prepetition claims of employees for wages, salaries, independent contractor obligations, expenses, and benefits on the

ground that the payment of such claims were necessary to effectuate a successful reorganization or liquidation. *See, e.g., Solar Trust of America, LLC,* Case No. 12-11136 (KG) (Bankr. D. Del. Apr. 3, 2012); *see also In re Broadsign International, Inc.*, Case No. 12-10789 (BLS) (Bankr. D. Del. Mar. 6, 2012); *In re Northstar Aerospace (USA) Inc.*, Case No. 12-11817 (MFW) (Bankr. D. Del. June 15, 2012).  The "necessity of payment" doctrine authorizes the relief requested in this Motion because the Employees and Independent Contractors are indispensable to both the Debtors' operations and the successful resolution of these chapter 11 Cases. In addition, the Debtors believe that the unpaid wages and other benefits earned within 180 days of the Petition Date, which the Debtors seek to pay are entitled, to priority status under sections 507(a)(4) and (a)(5) of the Bankruptcy Code, and do not exceed the maximum priority amounts proscribed by those statutes.

41.     As set forth in the First Day Declaration, the Employees are essential to the continued operation of the Debtors' businesses and their morale directly affects their effectiveness and productivity. Consequently, it is critical that the Debtors continue, in the ordinary course, those personnel policies, programs, and procedures that were in effect prior to the Petition Date. If the checks issued and electronic fund transfers requested in payment of any of the Employee Compensation or other Employee obligations are dishonored, or if such obligations are not timely paid postpetition, the Employees may likely suffer extreme personal hardship and may be unable to pay their daily living expenses. A loss of employee morale and goodwill at this crucial juncture would undermine the Debtors' stability, and undoubtedly would have a negative effect on the Debtors, their customers, the value of their assets and business, and their ability to achieve their objectives in chapter 11. As noted by the court in *In re Equalnet Comm'n Corp.,* 258 B.R. 368 (Bankr. S.D. Tex. 2000):

the need to pay prepetition employee wage claims in an ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted.

*See id.* at 370.

42.     As part of the foregoing relief, the Debtors also seek authority to pay all Withholding Obligations. The failure to make such payments may subject the Debtors and their officers to federal or state liability. *See City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages created trust relationship between debtor and city for payment of withheld taxes); *DuCharmes & Co. v. Michigan (In re DuCharmes & Co.),* 852 F.2d 194 (6th Cir. 1988) (noting the special liabilities for failure to pay trust fund taxes). Moreover, the monies payable for amounts held in trust like the Withholding Obligations generally are not property of a debtor's estate. *See Begier v. IRS,* 496 U.S. 53, 59 (1990) (because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate"). The failure to transfer these withheld funds could result in hardship to certain Employees or others. Furthermore, if the Debtors cannot remit these amounts, the Employees may face legal action due to the Debtors' failure to submit these payments.

43.     Finally, payment of Withholding Obligations that constitute "trust fund" taxes will not prejudice general unsecured creditors of the Debtors' estates as the relevant taxing authorities would hold priority claims under section 507(a)(8) of the Bankruptcy Code in respect of such obligations. Moreover, the monies payable for trust fund taxes, as well as the other funds that are held in trust for the benefit of third parties, such as withheld funds with respect to the Debtors' 401(k) plan, are not property of the Debtors' estates.

44.     The relief requested in this Motion is necessary to the viability of the Debtors'

businesses and maximization of the value of the Debtors' assets. Accordingly, the Debtors submit that the relief sought herein is consistent with sections 105(a), 363, 507, and 541 of the Bankruptcy Code.

45.     Nothing in this Motion, nor any payments made by the Debtors pursuant to the Motion, shall be deemed an assumption or rejection of any Employee Benefit Plan, employment agreement, other program or contract, or otherwise affect the Debtors' rights under sections 365 and 1108 of the Bankruptcy Code to assume or reject any executory contract between the Debtors and any Employee or other party.

### Bankruptcy Rule 6003 Satisfied and Request for Waiver of Stay

46.     The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein and in the First Day Declaration, FED. R. BANKR. P. 6003 has been satisfied and the relief requested herein should be granted.

47.     Specifically, FED. R. BANKR. P. 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

48.     No court within the Third Circuit has interpreted the "immediate and irreparable harm" language in the context of FED. R. BANKR. P. 6003 in any reported decision. The Third Circuit Court of Appeals, however, has interpreted the same language in the context of preliminary injunctions. In that context, the Third Circuit interpreted irreparable harm to mean a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of*

16

*Pittsburgh,* 235 Fed. Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills,* 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle County,* 40 F.2d 645, 653-55 (3d Cir. 1994).

49.     The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to FED. R. BANKR. P. 6004(h), "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of ten (10) days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtors' operations, going-concern value, and their efforts to pursue a sale or restructuring of their assets and liabilities.

50.     Accordingly, the relief requested herein is appropriate under the circumstances and under FED. R. BANKR. P. 6003 and 6004(h).

### Notice

51.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel to the Debtors' prepetition secured lender; (c) creditors holding the twenty (20) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (d) the Office of the United States Attorney General for the District of Delaware; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) the Nevada Gaming Commission.  As the Motion is seeking "first day" relief, within two (2) business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion in accordance with the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

52.    No previous application for the relief sought herein has been made to this or any

other court.

**Conclusion**

WHEREFORE, the Debtors respectfully request that this Court enter an order granting

the relief requested herein and that it grant the Debtors such other and further relief as is just

and proper.

Dated:  July 2, 2012                                          Respectfully Submitted,

Victoria W. Counihan (DE Bar No. 3488)
Dennis A. Meloro (DE Bar. No. 4435)
GREENBERG TRAURIG, LLP
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: 302-661-7000
Facsimile:  302-661-7360
Email: counihanv@gtlaw.com
        melorod@gtlaw.com

-and-

David D. Cleary
GREENBERG TRAURIG, LLP
2375 East Camelback Rd., Suite 700
Phoenix, Arizona 85016
Telephone: (602) 445-8000
Facsimile: (602) 445 8100
Email: clearyd@gtlaw.com

-and-

18

Nancy A. Mitchell
Matthew L. Hinker
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York
Telephone: (212) 801-9200
Facsimile: (212) 6400
Email: mitchelln@gtlaw.com
        hinkerm@gtlaw.com

*[Proposed] Counsel for Debtors
and Debtors-in-Possession*